IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| CELINE SA,<br><br>        Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>        Defendants. | |

# DECLARATION OF NICOLAS LAMBERT

## DECLARATION OF NICOLAS LAMBERT

I, Nicolas Lambert, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I have been employed by LVMH Moët Hennessy Louis Vuitton SE, ("LVMH") in Paris, France since 2016 and I am duly empowered to represent Celine SA ("Celine"). In my capacity as LVMH's Head of Online Brand Protection, I am responsible, in part, for Celine's trademark and anti-counterfeiting efforts in connection with Internet related matters. I am knowledgeable about or have access to business records concerning all information referenced herein, including, but not limited to, Celine's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage and anti-counterfeiting activities. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Celine is a luxury French fashion House founded in 1945 by Ms. Céline Vipiana. Celine is a world-famous luxury brand engaged in the business of styling and selling a diverse portfolio of ready-to-wear men's and women's apparel, fashion accessories, and leather goods (collectively, the "Celine Products") all of which prominently display its famous internationally-recognized and federally registered trademarks. In 1996, Celine became part of the Louis Vuitton Moet Hennessy (LVMH) group.

4. Celine Products have become enormously popular and even iconic, driven by Celine's arduous quality standards and innovative designs. Among the purchasing public, genuine

1

Celine Products are instantly recognizable as such. In the United States and around the world, the Celine brand has come to symbolize high quality, and Celine Products are among the most recognizable of their kind in the world.

5. The luxury French fashion house is currently under the creative direction of Hedi Slimane. The notorious designer joined Celine in February 2018, as its artistic, creative and image director, making his debut by expanding the brand's offering to menswear, couture and fragrance collections.

6. Celine Products are distributed and sold to customers through retailers throughout the United States, including in company-operated boutiques and through a selective network including high-quality department stores in Illinois such as Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

7. Celine incorporates a variety of distinctive marks in the design of its various Celine Products. As a result of its long-standing use, Celine owns common law trademark rights in its trademarks. Celine has also registered its trademarks with the United States Patent and Trademark Office. Celine Products typically include at least one of Celine's registered trademarks. Often several Celine marks are displayed on a single product. Celine uses its trademarks in connection with the marketing of its Celine Products, including the following marks which are collectively referred to as the "Celine Trademarks."

DocuSign Envelope ID: 20303585-D390-420D-8483-9D1997C6937E

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 982,010 | CELINE | April 9, 1974 | For: pullover type sweaters, shirts, blouses, boots, shoes and slippers in class 25. |
| 1,000,156 | CÉLINE | December 24, 1974 | For: leather goods- namely, purses, pouches, money bags and cardholders, wallets, passport and travel document cases, handbags in class 18. |
| 1,744,898 | CELINE | January 5, 1993 | For: retail clothing and accessories boutique services in class 42. |
| 1,772,927 | CELINE | May 25, 1993 | For: costume jewelry in class 14.<br><br>For: clothing; namely, sweaters, blouses, T- shirts, shorts, sweatshirts, lingerie, men's and ladies' suits, trousers, dresses, jackets, skirts, scarves, neckties, belts, boots, shoes, and parkas in class 25. |
| 2,475,129 | CELINE | August 7, 2001 | For: spectacles, spectacles cases, eyeglasses, and sunglasses in class 9. |
| 3,919,067 | [Celine logo] | February 15, 2011 | For: clothing, namely, overcoats, pullovers, jackets in class 25. |
| 4,741,109 | [handbag image] | May 19, 2015 | For: hand bags in class 18. |

3

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,879,264 | | January 5, 2016 | For: handbags, in class 18. |
| 5,489,333 | | June 12, 2018 | For: handbags in class 18. |
| 5,959,186 | | January 14, 2020 | For: leather and imitations of leather; travel bags, leather luggage travelling sets, travelling trunks and travelling bags, unfitted vanity cases, rucksacks, shoulder bags, handbags, attaché cases, document cases and briefcases of leather, pouches of leather, pouches of textile, pouches for holding keys, wallets, key cases, business card cases, calling card cases, and credit card cases; umbrellas in class 18.<br><br>For: clothing and underwear, namely, shirts, T-shirts, lingerie, belts, headscarves, neckties, shawls, waistcoats, skirts, waterproof clothing in the nature of waterproof jackets and raincoats, overcoats, trousers, |

4

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | jeans, pullovers, dresses, jackets, scarves, gloves, tights, socks, swimsuits, bathrobes, pyjamas, nightgowns, shorts, pocket handkerchiefs in the nature of pocket squares; shoes, boots, slippers; headwear in class 25. |
| 6,187,133 | *[CELINE logo]* | November 3, 2020 | For: Non-medicated soaps; perfumery, toilet water, eau de Cologne; perfumes; extracts of flowers being perfumes; plant extracts sold as components of cosmetics; incense; after-shave preparations; essential oils; oils for cosmetic use; cosmetics; cosmetic products, namely, foundations, lipsticks, lip gloss, eye shadows, mascaras, eyebrow pencils, eye shadows; hair, face and body powders, creams, sprays and lotions for cosmetic use; cleansing milk for toilet purposes; make-up removing preparations; deodorants for personal use; lip and body balms other than for medical use; bath and shower gels and bath and shower cosmetic preparations; beauty masks; hair shampoos and conditioners; non-medicated toiletry preparations; make-up; products for nail care and embellishment, namely, nail polish; massage candles for cosmetic use in class 3.<br><br>For: Combustible wax for candles; fuels and lighting fuel; candles and wicks for lighting; wicks for candles; candles for nightlights; perfumed candles; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | oils and fats for preservation of leather in class 4. |
| | | | For: Common metals and their alloys; ring shaped fittings of metal; chains of metal; rivets of metal; ironmongery and small items of metal hardware, namely, bag hangers of metal, metal rings, namely, ring shaped fittings of metal, boxes of common metal, bolts of metal, padlocks, chains of metal, stays of metal, namely, metal fence stays, pegs of metal, keys of metal, namely, metal keys for locks, nails, cramps of metal, hooks, nuts of metal, signboards of metal, labels of metal, box fasteners of metal, locks of metal for bags, house numbers and letters of common metal, except type, bindings of metal, namely, metal binding bands, latches of metal, handcuffs, clips of metal for sealing bags, nameplates of common metal, springs, rivets of metal, locks of metal, wire cloth, and screws of metal; buckles of common metal; metallic bag hooks; knobs of metal; boxes of common metal; chests of metal; metal industrial packaging containers; monuments of non-precious metal; works of art of common metal; statues and figurines made from common metal in class 6. |
| | | | For: Smart watches, connected bracelets, namely, wearable activity trackers; smart rings; stands, bags, satchels, carriers, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | covers and cases all specially adapted for holding photographic apparatus, video cameras, tablet computers, computers, laptops, portable phones, smart phones; digital photograph frame; blank USB flash drives; electronic publications downloadable online or from the Internet in the nature of magazines in the fields of fashion, fashion show, jewelry, clothes, bags, shoes, and perfumes; wrist straps, neck straps and fitted plastic films known as skins for covering and providing a scratch proof barrier or protection for portable phones; telecommunications apparatus in the nature of wireless receivers in the form of jewelry; optical goods, namely, spectacles, sunglasses, goggles for sports; smart glasses; spectacle frames; spectacle lenses, contact lenses; spectacle cords and chains; cases for spectacles or for contact lenses; binoculars; decorative magnets; ring holders, namely, holders specially adapted for holding smart rings in class 9.<br><br>For: Jewelry; rings being jewelry; medals; clocks; wristwatches; watches; watch cases; watch bands; watch chains; cases for watches; clasps for jewelry; key rings; wristwatch buckles and earrings; cuff links, bracelets, jewelry charms, charms for key rings, brooches, necklaces, chains being jewelry, tie pins, ornaments of precious metal in the nature of |

7

DocuSign Envelope ID: 20303585-D390-420D-8483-9D1997C6937E    Case: 1:22-cv-04893 Document #: 15 Filed: 09/22/22 Page 9 of 20 PageID #:368

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | jewelry, lockets; jewelry boxes and jewelry cases made from precious metals, their alloys or coated therewith; badges of precious metal; unwrought or semi-wrought precious metals; works of art of precious metal; precious stones in class 14. |
| | | | For: Leather and imitations of leather; unworked or semi-worked leather; imitation leather; furs being animal skins; fur-skins, namely, semi worked fur; traveling bags, leather traveling bag sets, trunks being luggage, traveling trunks and suitcases, garment bags for travel purposes, boxes intended for toiletry articles, namely, unfitted vanity cases, leather or leather board boxes; bags, namely, rucksacks, shoulder bags, handbags, sports bags, briefcases, document cases, briefcases and business cases made from leather; luggage tags for luggage, whips, animal leashes, saddlery; walking sticks; leather pouches, wallets, business card cases; credit card holders, namely, wallets; purses, key cases, credit card cases; umbrellas; parasols; beach umbrellas in class 18. |
| | | | For: Clothing, namely, underwear, shirts, sweaters, t-shirts, lingerie, belts, scarves, neckties, shawls, vests, jerseys, skirts, raincoats, coats, overcoats, suspenders, trousers, denim trousers, pullovers, dresses, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | jackets, sashes, gloves, tights, socks, bathing suits, bath robes, pajamas, nightgowns, shorts, pocket squares; shoes, fitted metal heel protectors for shoes; boots, half-boots; soles for footwear; slippers; headwear; cuffs; clothing and footwear for sports and skiing, namely, trousers, knitwear, namely, knitted shirts and sweaters, and hosiery, underwear, skirts, trousers, jackets, coats, shirts, gloves, waterproof clothing, namely, waterproof jackets and pants, anoraks, snow suits, hats, caps, socks, panty hose, footwear, boots, sports shoes, and ski boots in class 25. |
| | | | For: Retail stores and online retail stores in the fields of perfumery and cosmetics, clothing, footwear, headgear, leather goods, optical goods, jewelry, watches, and luggage; providing television home shopping services in the fields of perfumery and cosmetics, clothing, footwear, headgear, optical goods, leather goods, jewelry, watches, and luggage; gift registry services in class 35. |
| 6,337,314 | | May 4, 2021 | For: surveying instruments, photographic cameras, cinematographic cameras, weighing apparatus and instruments, distance measuring apparatus, signaling buoys, directional compasses; apparatus for recording, transmission, |

9

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | reproduction of sound or images; helmets for virtual reality, smartwatches, connected bracelets being wearable computer peripherals for users to connect wirelessly to computers; smart rings; blank magnetic data carriers, blank audio disks; stands for smartphones, computer bags, blank magnetic data carriers, smartphone covers, cases for photographic apparatus, video cameras, tablet computers, computers, laptops, portable phones, smart phones; blank compact disks, DVDs and other digital storage media; electronic book reader; data processing equipment, computers and computer peripheral equipment; mouse pads; headphone; loudspeakers; digital photo frames; blank USB flash drives; electronic agendas; downloadable electronic game software; telephones; mobile telephones; computers; portable computers; tablet computers; personal digital assistants (PDA); MP3 players; batteries; battery chargers; earphones; telecommunication apparatus in the nature of wireless receivers in the form of jewelry; optical goods, namely, spectacles, sunglasses, goggles for sports; smart glasses; spectacle frames; spectacle lenses, contact lenses; spectacle cords and chains; cases for spectacles or for contact lenses; binoculars; decorative |

10

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | magnets; ring holders for mobile phones in class 9.<br><br>For: Leather and imitations of leather; unworked or semi-worked leather; imitation leather; fur pelts; fur being animal skins; traveling bags, leather traveling bag sets, travel chests being luggage, trunks being luggage and suitcases, garment bags for travel, boxes of leather or leather board; leather bags, rucksacks, shoulder bags, handbags, sports bags, carrying cases, attaché cases, document cases and business cases of leather; luggage tags for luggage, whips, animal leashes, saddlery; walking sticks; clutch bags, wallets, business card cases; credit card holders; purses, key cases, credit card cases; umbrellas; parasols; beach umbrellas in class 18. |

8. The Celine Trademarks have been used exclusively and continuously in the U.S. by Celine, and have never been abandoned. The above U.S. registrations for the Celine Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as **Exhibit 1** are true and correct copies of the U.S. Registration Certificates for the Celine Trademarks included in the above table.

9. The Celine Trademarks are exclusive to Celine and are displayed extensively on Celine Products and in Celine's marketing and promotional materials. Celine Products have long

11

DocuSign Envelope ID: 20303585-D390-420D-8487-9D1997C6937E

been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Celine has expended millions of dollars annually in advertising, promoting and marketing featuring the Celine Trademarks. Because of these and other factors, the Celine name and the Celine Trademarks have become famous throughout the United States.

10. The Celine Trademarks are distinctive when applied to the Celine Products, signifying to the purchaser that the products come from Celine and are manufactured to Celine's quality standards. Whether Celine manufactures the products itself or licenses others to do so, Celine has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Celine Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Celine Trademarks is of incalculable and inestimable value to Celine.

11. In December 2018, the growth of the company was supported by the launch of Celine's e-commerce website in France, soon followed by Germany, the UK, Spain, Italy and the United States where it promotes Celine Products at Celine.com. Celine Products are featured and described on the website and are available for purchase. The Celine.com website features proprietary content, images, and designs exclusive to Celine.

12. Celine has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Celine Trademarks. As a result, products bearing the Celine Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Celine. Celine

is a multi-million-dollar operation, and Celine Products have become among the most popular of their kind in the world.

13. The success of the Celine brand has resulted in its significant counterfeiting. Consequently, Celine has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Celine has identified numerous fully interactive e-commerce stores, including those operating under the seller aliases identified in Schedule A to the Complaint[1] (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products, including handbags, purses, and other fashion accessories, using infringing and counterfeit versions of the Celine Trademarks (the "Counterfeit Celine Products") to consumers in this Judicial District and throughout the United States.

14. I perform, supervise, and/or direct investigations related to Internet-based infringement of the Celine Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Celine Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Celine Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under Online Marketplaces.

which the Counterfeit Celine Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Celine and do not have the right or authority to use the Celine Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

15. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Celine Products to residents of Illinois.

16. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Celine has not licensed or authorized Defendants to use any of the Celine Trademarks, and none of the Defendants are authorized retailers of genuine Celine Products.

17. Many Defendants also deceive unknowing consumers by using the Celine Trademarks

14

without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Celine Products. Other e-commerce stores operating under Seller Aliases omit using the Celine Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Celine Products.

18. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

19. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Celine Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

20. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-

out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Celine Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Celine Products were manufactured by and come from a common source and that Defendants are interrelated.

21. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

22. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Celine's enforcement efforts. On information and belief, Defendants maintain off-shore accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

23. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Celine Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Celine Trademarks in connection with the advertisement, distribution, offering for

sale, and sale of Counterfeit Celine Products into the United States and Illinois over the Internet.

24. Monetary damages cannot adequately compensate Celine for ongoing infringement because monetary damages fail to address the loss of control of and damage to Celine's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Celine's reputation and the goodwill associated therewith by acts of infringement.

25. Celine's goodwill and reputation are irreparably damaged when the Celine Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Celine. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Celine's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

26. Celine is further irreparably harmed by the unauthorized use of the Celine Trademarks because counterfeiters take away Celine's ability to control the nature and quality of the Counterfeit Celine Products. Loss of quality control over goods offered for sale or sold under the Celine Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

27. The use of the Celine Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Celine is likely causing and will continue to cause consumer confusion, which weakens Celine's brand recognition and reputation.

17

Consumers who mistakenly believe that the Counterfeit Celine Products he or she has purchased originated from Celine will come to believe that Celine offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Celine Products, resulting in a loss or undermining of Celine's reputation and goodwill. Indeed, there is damage to Celine's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Celine Products worn or used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Celine and the Celine Trademarks. Such post-sale confusion results in damage to Celine's reputation and correlates to a loss of unquantifiable future sales.

28. Celine is further irreparably damaged due to a loss of exclusivity. Celine Products are meant to be exclusive. Celine's extensive marketing and innovative designs are aimed at growing and sustaining sales. The Celine Trademarks are distinctive and signify to consumers that the products originate from Celine and are manufactured to Celine's high quality standards. When counterfeiters use the Celine Trademarks to offer for sale or sell goods without Celine's authorization, the exclusivity of Celine's products, as well as Celine's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

29. Celine will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 31st day of August 2022 at Paris, France.

-DocuSigned by:

*Nicolas Lambert*

A207A327B631495...

Nicolas Lambert